JOHN B. SHOOK, ESQ.
Nevada Bar No. 5499
ROBERT L. ENGLISH, ESQ.
Nevada Bar No. 3504
710 South Fourth Street
**SHOOK & STONE, CHTD.**
Las Vegas, NV 89101
Office: (702) 385-2220
*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

TOMMY LYNCH as ADMINSTRATOR for
the ESTATE of TAMMY LYNCH, and
TOMMY LYNCH and APRIL BLACK,
individually as heirs of Tammy Lynch,

                   Plaintiffs,

v.

SAMIR ADRIAN HERNANDEZ, individually,
LIZBETH BARRAGAN, individually,
LAUGHLIN WATERCRAFT RENTALS LLC;
KABUL, INC., d/b/a FASTRIP PWC
RENTALS; DARRYL PETER ALEXANDER,
JR., individually, DOES I-X; and ROE
CORPORATIONS I-X, inclusive,

                   Defendants.

**COMPLAINT**

**WRONGFUL DEATH/NEGLIGENCE**

**JURY TRIAL DEMANDED**

    Plaintiffs, TOMMY LYNCH as ADMINISTRATOR for the ESTATE of TAMMY LYNCH and TOMMY LYNCH and APRIL BLACK, by and through their attorneys, complain and allege as follows:

## INTRODUCTION

1.    Decedent TAMMY LYNCH ("TAMMY") was killed as the result of a watercraft crash occurring on the Colorado River on August 21, 2020.

1

2.    On that date, at approximately 4:50 p.m., TAMMY was riding as a passenger on a personal watercraft rented from Defendant KABUL, INC., d/b/a FASTRIP PWC RENTALS; and operated by Defendant DARRYL PETER ALEXANDER, JR ("ALEXANDER").

3.    At that time, TAMMY LYNCH was violently struck from behind by a personal watercraft operated by SAMIR ADRIAN HERNANDEZ ("HERNANDEZ").

4.    At the time of the crash, Defendant HERNANDEZ was impaired by the use of drugs and alcohol.

5.    The personal watercraft operated by Defendant HERNANDEZ had been rented from Defendant LAUGHLIN WATERCRAFT RENTALS LLC.

6.    As a result of the aforesaid violent collision between these two personal watercrafts, Plaintiff TAMMY LYNCH sustained multiple traumatic blunt force injuries to her body including, inter alia, multiple right-sided rib fractures, several lung contusions on both sides, extensive lacerations to her liver and a myocardial contusion of the right ventricle.

7.    Immediately after the accident, Decedent TAMMY LYNCH was conscious and able to communicate, but thereafter, she drifted in and out of consciousness until she became fully unresponsive and succumbed to her injuries.

8.    Decedent TAMMY LYNCH was only 23 years old at the time of her death.

## THE PARTIES

9.    At all times relevant herein, Plaintiff TOMMY LYNCH was and is the natural father and heir of the decedent, TAMMY LYNCH, (hereinafter "Plaintiff TOMMY LYNCH"), residing in the City and State of New York.

10.    At all times relevant herein, Plaintiff APRIL BLACK was and is the natural mother and heir of the decedent, TAMMY LYNCH, (hereinafter "Plaintiff BLACK"), residing in the City and State of New York.

11.     On August 3, 2021, Plaintiff TOMMY LYNCH was appointed as the Administrator of the Estate of TAMMY LYNCH by the Surrogate's Court of the state of New York, Bronx County, and is a proper party to this pursuant to Nevada Wrongful Death Statute NRS 41.085

12.     Upon information and belief at all times alleged herein, Defendant HERNANDEZ was and is a resident of Los Angeles, California.

13.     At all times alleged herein, Defendant BARRAGAN was and is a resident of Los Angeles, California.

14.     At all times alleged herein, Defendant LAUGHLIN WATERCRAFT RENTALS (hereinafter "LAUGHLIN WATERCRAFT") is a Nevada corporation with its principal place of business at 2900 S. Casino Dr., Laughlin, Nevada.

15.     At all times alleged herein, Defendant KABUL INC, d/b/a FASTTRIP PWC RENTALS ("FASTRIP PWC RENTALS"), was and is an ARIZONA corporation with its principal place of business at  1131 AZ-95, Bullhead City, Arizona.

16.     Pursuant to NRCP 10(a), FRCP 10 and Nurenberger Hercules-Werke GMBH v. Virostek, 107 Nev. 873, 822 P.2d 1100 (1991), the identity of resident and non-resident defendants designated herein as "DOES" I through X, and "ROE CORPORATIONS" I through X, are presently unknown to Plaintiff.

17.     Upon information and belief these "DOE" and "ROE" defendants, and each of them, were involved in the initiation, approval, support, or execution of one or more of the wrongful acts or omissions upon which this action is premised, or of similar actions directed against Plaintiff about which Plaintiff is presently unaware, and which directly and proximately caused injury and damages to Plaintiff, including but not limited to: unreasonably: owning; maintaining; operating; entrusting; failing to train or instruct or warn in proper usage; failure to properly hire and supervise employees; retaining improper employees; or, repairing any craft or vehicle that caused injury to Plaintiff.

18.     The "DOE" and "ROE" Defendants also include but are not limited to: a) presently unknown employers of Defendant(s) which are responsible for the acts of their employees under statutes or ordinances, or under the doctrine of respondent superior or vicarious liability; b) owners of the defendant's craft or vehicle who are liable under statutes or ordinances, or the family purpose doctrine; c) person(s) and/or entities involved in the design, manufacture, testing, warning, distribution and placement into the stream of commerce of an unreasonably dangerous and unfit product that caused damages to Plaintiff, and which persons are strictly liable under products liability law; and, d) known actors or witnesses whose particular identity and/or culpability is not known at this time but may be made known once true facts are learned.

19.     As the specific identities of these parties are revealed through discovery, the "DOE" and "ROE" designation will be replaced to identify these parties by their true names and capacities. The "DOE" and "ROE" defendants are persons or entities generally negligent, the specifics of which are not presently known. Hereinafter, reference to Defendant or Defendants includes the "DOE" and "ROE" Defendants, and each of them that might have performed or failed to perform the same actions and/or omissions allegedly committed by the named Defendants.

20.     Upon information and belief, Defendants, inclusive of "DOES" and "ROES", and each of them, at all relevant times, were the owner, partner, servant, officer, agent, employer and/or employee of the other, and each of them, and were at all relevant times acting within the scope and performance of said partnership, agency, master/servant, and employment relationship.

21.     Whenever it is alleged in this Complaint that a Defendant did any act or thing, it is meant that such Defendants' officers, agents, servants, employees, or representatives did such act or thing and at the time such act or thing was done, it was done with full authorization and/or ratification of such Defendant or as done in the normal and routine course and scope of business, or with the actual, apparent, and/or implied authority of Defendants' officers, agents, servants,

employees, and/or representatives. Specifically, Defendants are liable for the actions of their respective officers, agents, servants, employees, and representatives.

22.     All of the Defendants named herein are jointly and severally liable to Plaintiffs for all of Plaintiffs' damages

23.     Plaintiff is informed and believes and thereupon alleges that Defendants, and each of them, jointly and in concert undertook to perform the acts as alleged herein, that Defendants and each of them had full knowledge of the acts of each co-Defendant as alleged herein, and that each Defendant authorized or subsequently ratified the acts of each co-Defendant(s) as alleged herein, making each co-Defendant an agent of the other Defendants and making each Defendant jointly and/or severally responsible and liable for the acts and omissions of each co-Defendant as alleged herein.

## JURISDICTION AND VENUE

24.     This Court has admiralty jurisdiction pursuant to 28 U.S.C. § 1333.  The Court also has subject matter jurisdiction under 28 U.S.C. § 1332 due to diversity of citizenship.  The amount in controversy exceeds the jurisdictional minimum of $75,000.00.

25.     Venue is proper in this Court, because the plaintiff's injuries occurred in the waters of the Colorado River within the jurisdictional boundaries of the District Court of Nevada.

26.     The Colorado River is a navigable waterway between Nevada and Arizona.

27.     The operation of recreational boats, including personal watercraft, bears a significant relationship to maritime activities.

## GENERAL ALLEGATIONS

28.     Plaintiffs refer to and incorporate by reference all allegations contained above as if the same were more fully set forth herein.

29.    On or about August 21, 2020, at approximately 4:50 p.m., TAMMY was a passenger on Yamaha WaveRunner watercraft ("Alexander watercraft") owned by KABUL INC., d/b/a FASTRIP PWC RENTALS.

30.    At that time the Alexander watercraft was being operated by Defendant DARYL PETER ALEXANDER, in Nevada on the Colorado River near Community Park.

31.    At the aforesaid time and place, Defendant HERNANDEZ also operated a Yamaha WaveRunner watercraft ("Hernandez watercraft"), owned by LAUGHLIN WATERCRAFT RENTAL, in or about the area of Community Park.

32.    At the above time and place, Defendant HERNANDEZ failed to maintain a safe distance and speed from the Alexander watercraft causing the Hernandez watercraft to violently strike the Alexander watercraft on which Tammy Lynch was a passenger.

33.    As a result of the subject collision, Plaintiff TAMMY LYNCH sustained severe and grievous personal injuries, leading to her death at the age of 23.

34.    Apart from the malice, wantonness, recklessness, and gross negligence of Defendant SAMIR ADRIAN HERNANDEZ, Defendants LAUGHLIN WATERCRAFT RENTALS and FASTRIP PWC RENTALS also engaged in multiple negligent acts and omissions, as set forth below, that caused and/or contributed to the subject accident.

35.    Defendants LIZBETH BARRAGAN and DARYL PETER ALEXANDER, JR., also engaged in multiple negligent acts and omissions, as set forth below, that caused and/or contributed to the occurrence of the subject accident.

36.    All of the named defendants, including  Defendants LAUGHLIN WATERCRAFT RENTALS, FASTRIP PWC RENTALS SAMIR ADRIAN HERNANDEZ, LIZBETH BARRAGAN, DARYL PETER ALEXANDER and/or the "DOE" and "ROE" Defendants, owed a duty of care to Plaintiff TAMMY LYNCH, and all other operators/passengers of watercrafts at the subject location, to

act in a safe and proper manner, and in compliance with any and all legal statutes, regulations, codes, ordinances, rules, and any and all other legal authorities governing the operation watercrafts in that location.

37.    Defendants LAUGHLIN WATERCRAFT RENTALS, FASTRIP PWC RENTALS, SAMIR ADRIAN HERNANDEZ, LIZBETH BARRAGAN, DARYL PETER ALEXANDER, and/or the "DOE" and "ROE" Defendants, breached their duty to ensure safe and proper operation of their respective watercraft vessels, to the detriment of Plaintiff TAMMY LYNCH, proximately causing her injuries and death.

38.    Defendants LAUGHLIN WATERCRAFT RENTALS, FASTRIP PWC RENTALS, SAMIR ADRIAN HERNANDEZ, LIZBETH BARRAGAN, DARYL PETER ALEXANDER, and/or the "DOE" and "ROE" Defendants, and each of them, violated one or more statutes, codes, ordinances or rules which governed the operation of watercraft vessels, and which were enacted to protect persons such as Plaintiff TAMMY LYNCH, and prevent the types of injuries and damages Plaintiff TAMMY LYNCH sustained.

39.    Defendants LAUGHLIN WATERCRAFT RENTALS, FASTRIP PWC RENTALS, SAMIR ADRIAN HERNANDEZ, LIZBETH BARRAGAN, DARYL PETER ALEXANDER, and/or the "DOE" and "ROE" were negligent *per se*, and are therefore liable for proximately causing Plaintiff TAMMY LYNCH's severe injuries and death.

40.    As a direct and proximate result of the negligent acts and omissions of Defendants LAUGHLIN WATERCRAFT RENTALS, FASTRIP PWC RENTALS, SAMIR ADRIAN HERNANDEZ, LIZBETH BARRAGAN, DARYL PETER ALEXANDER, and/or the "DOE" and "ROE" Defendants, Plaintiff TAMMY LYNCH sustained severe and grievous physical injuries, as well as shock, severe anxiety, and anguish, culminating in her death on the same date of the subject accident, all to Plaintiff's general damages in an amount in excess of $75,000.00.

41.     Defendants LAUGHLIN WATERCRAFT RENTALS, FASTRIP PWC RENTALS, SAMIR ADRIAN HERNANDEZ, LIZBETH BARRAGAN, DARYL PETER ALEXANDER, and/or the "DOE" and "ROE" Defendants, are each jointly and severally liable for proximately causing Plaintiff TAMMY LYNCH's damages. The negligent acts and/or omissions of each named Defendant are set forth below.

### FIRST CAUSE OF ACTION

#### Negligence of Defendant Laughlin Watercraft Rentals

42.     The Plaintiffs hereby repeat and re-allege each and every fact set forth in the preceding paragraphs as though set forth fully herein

43.     On August 28, 2016, Defendant LAUGHLIN WATERCRAFT RENTALS caused a Yamaha WaveRunner watercraft to be rented to and/or used by Defendants LIZBETH BARRAGAN and SAMIR ADRIAN HERNANDEZ.

44.     Defendant LAUGHLIN WATERCRAFT RENTALS and/or its agents, servants, officers, or employees negligently entrusted said Yamaha watercraft to Defendants HERNANDEZ and BARRAGAN, without taking necessary and appropriate measures to ensure that said Defendants were competent to operate the watercraft in a safe and reasonable manner at all times.

45.     Defendant LAUGHLIN WATERCRAFT RENTALS failed to ensure that Defendants HERNANDEZ and BARRAGAN presented proof that they had received proper training and instruction on the safe operation of their watercraft vessels, as required under Nevada and California law pursuant to NRS.448.730 and California Harbors and Navigation Code, Section 678-678.15.

46.     Defendant LAUGHLIN WATERCRAFT RENTALS also failed to instruct and/or warn Defendants HERNANDEZ and BARRAGAN about the watercraft's safe usage and operational functions, prior to renting and entrusting the watercraft to Defendant HERNANDEZ and BARRAGAN.

47.     Specifically, Defendant LAUGHLIN WATERCRAFT RENTALS failed to instruct and/or warn Defendants HERNANDEZ and BARRAGAN about the proper operation of the watercraft's steering, braking, acceleration, deceleration systems, and its limitations and propensities among other operational functions, the need to operate defensively and scan constantly for other vessels, the need to continuously apply the throttle in order to be able to steer the watercraft, and the need to take early action to avoid collisions, thereby causing Plaintiff TAMMY LYNCH to sustain significant injuries and resulting in her death.

48.     Defendant LAUGHLIN WATERCRAFT RENTALS and/or its agents, servants, officers, or employees also negligently failed to maintain, repair, store, and/or otherwise operate the watercraft or vehicle in a safe and proper manner, and/or in compliance with any and all legal statutes, regulations, codes, ordinances, rules, and any and all other legal authorities which may govern the operation and maintenance of the aforementioned Yamaha watercraft.

49.     Defendant LAUGHLIN WATERCRAFT RENTALS also violated the applicable standard of care in other material respects. Specifically, the standard of care requires that watercraft rental companies, such as Defendant LAUGHLIN WATERCRAFT RENTALS, implement rental checkout procedures that identify potentially impaired renters and/or users and prevent them from being allowed to operate the rental personal watercraft vessels while under the influence of alcohol and/or drugs.

50.     Defendant LAUGHLIN WATERCRAFT RENTALS breached this duty by failing to implement *any* rental checkout procedures to identify impaired renters and/or users and prevent them from operating their personal watercrafts while under the influence of alcohol and/or drugs.

51.     Defendant LAUGHLIN WATERCRAFT RENTALS knew that renters could foreseeably allow third parties (non-renters) to use and operate the subject personal watercraft vessel, warning them that "*if you let someone other than yourself drive*, you are responsible for any damage

or liabilities." (See Laughlin Watercraft Rules, Regulations and Instructions No. 10) (emphasis supplied).

52.    Notwithstanding its awareness that renters might allow "someone other than" the renter to "drive" the subject watercraft, Defendant LAUGHLIN WATERCRAFT RENTALS failed to implement *any* rules, regulations, guidelines, policies and/or procedures for ensure that such an individual was properly qualified to operate the subject watercraft vessel in a safe and proper manner.

53.    In fact, at the time that Defendant LAUGHLIN WATERCRAFT RENTALS rented out the subject personal watercraft to defendant LIZBETH BARRAGAN, "someone other than" her -- namely, Defendant SAMIR ADRIAN HERNANDEZ -- was standing right next to her, and was visibly intoxicated.

54.    Specifically, Defendant SAMIR ADRIAN HERNANDEZ exhibited the following clear signs of intoxication:  i) he had a strong odor of alcohol on his breath; ii) his speech was slurred; iii) his eyes were bloodshot eyes and glossed over; and iv) he walked with an unsteady gait.

55.    Notwithstanding SAMIR ADRIAN HERNANDEZ's obvious signs of impairment, Defendant LAUGHLIN WATERCRAFT RENTALS, consciously disregarded and ignored HERNANDEZ' impaired condition and did not take any measures whatsoever to stop him from operating the subject personal watercraft.

56.    Based on the foregoing, the rental checkout procedures of Defendant LAUGHLIN WATERCRAFT RENTALS were grossly negligent, and directly caused the subject accident to occur.

57.    Apart from the above negligent acts of omissions, Defendant LAUGHLIN WATERCRAFT RENTALS was negligent in the training of its employees.

58.    Specifically, the standard of care requires that watercraft rental companies, such as Defendant LAUGHLIN WATERCRAFT RENTALS, take action to ensure that employees who are responsible for renting out their watercraft vessels have been given full and proper training as to how

to instruct operators and users of their watercraft rentals to safely operate the vessel in a designated waterway.

59.    Defendant LAUGHLIN WATERCRAFT RENTALS breached this duty by failing to give full and proper training to its employees on how to instruct operators and users of their watercraft rentals to safely operate the vessel in a designated waterway.

60.    Specifically, Defendant LAUGHLIN WATERCRAFT RENTALS failed to train its employees to instruct and/or warn operators, such as Defendants HERNANDEZ and BARRAGAN, about the proper operation of the watercraft's steering, braking, acceleration, deceleration systems, and its limitations and propensities among other operational functions, the specific characteristics of the location where the water craft would be operating, the need to operate defensively and scan constantly for other vessels, the need to continuously apply the throttle in order to be able to steer the watercraft, and the need to take early action to avoid collisions, thereby causing Plaintiff TAMMY LYNCH to sustain significant injuries and resulting in her death.

61.    The failure of Defendant LAUGHLIN WATERCRAFT RENTALS to train its employees to provide essential information regarding the use of the watercraft vessel was a substantial contributing proximate cause to Plaintiff TAMMY LYNCH's grievous personal injuries and resulting death.

62.    LAUGHLIN WATERCRAFT RENTALS actions in renting and authorizing the use of the rented watercraft by Defendants HERNADEZ and BARRAGAN was a violation of NRS 488.730(3), regarding renting watercraft to qualified persons and constitutes negligence per se.

63.    As a direct and proximate result of the aforesaid negligence and negligence per se of Defendant LAUGHLIN WATERCRAFT, Plaintiffs, in their individual and representative capacities, seek to recover the following damages, all authorized pursuant to NRS 41.085, in addition to those damages permitted by Nevada Law:

(a)     Pecuniary damages for grief or sorrow, loss of probable support, companionship, society, comfort and consortium, and damages for pain, suffering or disfigurement of the Decedent;

(b)     Special damages, such as medical expenses, which the Decedent incurred before her death for and to employ physicians, nurses, physical therapists, and to procure hospitalization, x-rays, medicine, and general medical care and attention; and

(c)     Funeral expenses related to the burial of the Decedent.

64.     The damages recoverable pursuant to NRS 41.085 and NRS 41.100 are in excess of $75,000.00, and are recoverable by the Decedent's heirs and Estate.

65.     As a direct and proximate result of the aforesaid negligence, carelessness and recklessness of the Defendant, Decedent suffered economic damages in an amount in excess of $75,000.00, which would have both enriched her estate and would have provided support to her heirs.

66.     As a direct and proximate result of the aforesaid negligence, carelessness and recklessness of the Defendant, the resulting impact caused Plaintiffs to suffer serious physical, emotional, and financial injury, and was rendered sick and lame, receiving both internal and external injuries, severe shock to their nervous system, great pain, suffering, and anxiety all of which caused and will continue to cause Plaintiffs physical, mental and nervous pain and suffering in amounts each in excess of $75,000.00, in specific amounts to be proven at trial.

67.     As a direct and proximate result of the aforesaid negligence, carelessness and recklessness of the Defendant,  Plaintiffs were required to incur medical bills and funeral expenses. Upon information and belief, these damages for each Plaintiff are in excess of $75,000.00, in specific amounts to be proven at trial.

68.     As a further direct and proximate result, Plaintiffs suffered a loss of past and future household services, in amounts each in excess of $75,000.00, to be proven at trial.

69.     As a further direct and proximate result, Plaintiffs suffered a loss of the enjoyment of life, in amounts each in excess of $75,000.00, to be proven at trial.

## SECOND CAUSE OF ACTION

### (Negligence of Defendant Fastrip PWC Rentals)

70.     The Plaintiffs hereby repeat and re-allege each and every fact set forth in the preceding paragraphs, as though set forth in full at this time.

71.     On August 21, 2020, Defendant FASTRIP PWC RENTALS caused a Yamaha watercraft to be rented and/or leased to Defendant DARYL PETER ALEXANDER.

72.     Defendant FASTRIP PWC RENTALS and/or its agents, servants, officers, or employees negligently entrusted said Yamaha watercraft to Defendant DARYL PETER ALEXANDER, without taking necessary and appropriate measures to ensure that said Defendant Alexander would operate the watercraft in a safe and reasonable manner at all times.

73.     Defendant FASTRIP PWC RENTALS also failed to instruct and/or warn Defendant ALEXANDER about the watercraft's safe usage and operational functions, prior to renting and entrusting the watercraft to Defendant ALEXANDER.

74.     Specifically, Defendant FASTRIP PWC RENTALS  failed to instruct and/or warn Defendant DARYL PETER ALEXANDER about the proper operation of the watercraft's steering, braking, acceleration, deceleration systems, and its limitations and propensities among other operational functions, the specific characteristics of the area where the water craft would be operated, the need to operate defensively and scan constantly for other vessels, the need to continuously apply the throttle in order to be able to steer the watercraft, and the need to take early action to avoid

collisions, thereby causing Plaintiff TAMMY LYNCH to sustain significant injuries and resulting in her death.

75.    Defendant FASTRIP PWC RENTALS and/or its agents, servants, officers, or employees also negligently failed to maintain, repair, store, and/or otherwise operate the watercraft or vehicle in a safe and proper manner, and/or in compliance with any and all legal statutes, regulations, codes, ordinances, rules, and any and all other legal authorities which may govern the operation and maintenance of the aforementioned Yamaha watercraft.

76.    Defendant FASTRIP PWC RENTALS also failed to instruct and/or warn Defendant DARYL PETER ALEXANDER about the craft's safe usage and operational functions, including, but not limited to, the proper operation of the craft's steering, braking, acceleration, deceleration systems, and its limitations and propensities among other operational functions, prior to renting and entrusting the craft to Defendant HERNANDEZ and BARRAGAN, thereby causing Plaintiff TAMMY LYNCH to sustain significant injuries and death.

77.    Defendant FASTRIP PWC RENTALS and/or its agents, servants, officers, or employees negligently failed to maintain, repair, store, and/or otherwise operate the craft or vehicle in a safe and proper manner, and/or in compliance with any and all legal statutes, regulations, codes, ordinances, rules, and any and all other legal authorities which may govern the operation and maintenance of the aforementioned Yamaha watercraft.

78.    The failure of Defendant FASTRIP PWC RENTALS to train its employees to provide essential information in regard to the use of the watercraft vessel was a substantial contributing proximate cause to Plaintiff TAMMY LYNCH's grievous personal injuries and resulting death.

79.    As a direct and proximate result of the aforesaid negligence of Defendant FASTRIP PWC RENTALS Plaintiffs, in their individual and representative capacities, seek to recover the

following damages, all authorized pursuant to NRS 41.085, in addition to those damages permitted by Nevada Law:

        (a)     Pecuniary damages for grief or sorrow, loss of probable support, companionship, society, comfort and consortium, and damages for pain, suffering or disfigurement of the Decedent;

        (b)     Special damages, such as medical expenses, which the Decedent incurred before her death for and to employ physicians, nurses, physical therapists, and to procure hospitalization, x-rays, medicine, and general medical care and attention; and

        (c)     Funeral expenses related to the burial of the Decedent.

80.    The damages recoverable pursuant to NRS 41.085 and NRS 41.100 are in excess of $75,000.00, and are recoverable by the Decedent's heir and Estate.

81.    As a direct and proximate result of the aforesaid negligence, carelessness and recklessness of the Defendant, Decedent suffered economic damages in an amount in excess of $75,000.00, which would have both enriched her estate and would have provided support to her heirs.

82.    As a direct and proximate result of the aforesaid negligence, carelessness and recklessness of the Defendant, the resulting impact caused Plaintiffs to suffer serious physical, emotional, and financial injury, and was rendered sick and lame, receiving both internal and external injuries, severe shock to their nervous system, great pain, suffering, and anxiety all of which caused and will continue to cause Plaintiffs physical, mental and nervous pain and suffering in amounts each in excess of $75,000.00, in specific amounts to be proven at trial.

83.    As a direct and proximate result of the aforesaid negligence, carelessness and recklessness of the Defendant, Plaintiffs were required to incur medical bills and funeral expenses.

Upon information and belief, these damages for each Plaintiff are in excess of $75,000.00, in specific amounts to be proven at trial.

84.    As a further direct and proximate result, Plaintiffs suffered a loss of past and future household services, in amounts each in excess of $75,000.00, to be proven at trial.

85.    As a further direct and proximate result, Plaintiffs suffered a loss of the enjoyment of life, in amounts each in excess of $75,000.00, to be proven at trial.

### THIRD CAUSE OF ACTION

**(Negligence and intentional conduct against Defendant SAMIAR ADRIAN HERNANDEZ)**

86.    Plaintiff hereby incorporates by reference all preceding paragraphs as if fully set forth herein.

87.    Defendant SAMIR ADRIAN HERNANDEZ had a duty to safely operate the personal watercraft vessel that he was using at the time of the accident.

88.    Defendant SAMIR ADRIAN HERNANDEZ breached this duty by becoming impaired due to his consumption of alcohol and drugs prior to operating the subject personal watercraft.

89.    Defendant SAMIR ADRIAN HERNANDEZ conduct was negligent, malicious, wanton, reckless and intentional as a result of his impaired state due to his consumption of alcohol and drugs prior to operating the subject personal watercraft vessel.

90.    Defendant SAMIR ADRIAN HERNANDEZ was further negligent in operating his personal watercraft at an excessive rate of speed, and in a dangerous, hazardous and unsafe manner, and in colliding with the personal watercraft on which Plaintiff TAMMY LYNCH was a passenger.

91.    Defendant SAMIR ADRIAN HERNANDEZ'S actions in operating the watercraft were in violation of Nevada and California Laws:

a).    NRS 488.730 and California Harbors and Navigation Code, Section 678-678.15 regarding certification requirement;

b).     NRS 488.540 Maintaining a proper look out for vessels

c).     NRS 488.400(1) and NRS 488.580 Operating vessel in a reckless manner; and

d)     NRS 488.400(2) Operating a vessel under the influence

92.     Defendant SAMIR ADRIAN HERNANDEZ's negligence, negligence per se, gross negligence, wantonness, recklessness and intentional conduct proximately caused Plaintiff TAMMY LYNCH to suffer grievous personal injuries and resulted in her death.

93.     As a direct and proximate result of the aforesaid negligence gross negligence, wantonness, recklessness and intentional conduct Defendant HERNANDEZ, Plaintiffs, in their individual and representative capacities, seek to recover the following damages, all authorized pursuant to NRS 41.085, in addition to those damages permitted by Nevada Law:

(a)     Pecuniary damages for grief or sorrow, loss of probable support, companionship, society, comfort and consortium, and damages for pain, suffering or disfigurement of the Decedent;

(b)     Special damages, such as medical expenses, which the Decedent incurred before her death for and to employ physicians, nurses, physical therapists, and to procure hospitalization, x-rays, medicine, and general medical care and attention; and

(c)     Funeral expenses related to the burial of the Decedent.

(d)     Punitive damages

94.     The damages recoverable pursuant to NRS 41.085 and NRS 41.100 are in excess of $75,000.00, and are recoverable by the Decedent's heir and Estate.

95.     As a direct and proximate result of the aforesaid negligence, carelessness and recklessness of the Defendants, and each of them, Decedent suffered economic damages in an amount in excess of $75,000.00, which would have both enriched her estate and would have provided support to her heirs.

96.     As a direct and proximate result of the aforesaid negligence, carelessness and recklessness of the Defendant, the resulting impact caused Plaintiffs to suffer serious physical, emotional, and financial injury, and was rendered sick and lame, receiving both internal and external injuries, severe shock to their nervous system, great pain, suffering, and anxiety all of which caused and will continue to cause Plaintiffs physical, mental and nervous pain and suffering in amounts each in excess of $75,000.00, in specific amounts to be proven at trial.

97.     As a direct and proximate result of the aforesaid negligence, carelessness and recklessness of the Defendant, and each of them, Plaintiffs were required to incur medical bills and funeral expenses. Upon information and belief, these damages for each Plaintiff are in excess of $75,000.00, in specific amounts to be proven at trial.

98.     As a further direct and proximate result, Plaintiffs suffered a loss of past and future household services, in amounts each in excess of $75,000.00, to be proven at trial.

99.     As a further direct and proximate result, Plaintiffs suffered a loss of the enjoyment of life, in amounts each in excess of $75,000.00, to be proven at trial.

## FOURTH CAUSE OF ACTION

### (Negligence against Defendant LIZBETH BARRAGAN)

100.     Plaintiff hereby incorporates by reference all preceding paragraphs as if fully set forth herein.

101.     Defendant LIZBETH BARRAGAN had a duty to safely operate the personal watercraft vessel that she had rented from Defendant LAUGHLIN WATERCRAFT RENTALS AND NOT To entrust it use to person who were incompetent or likely to use the vessel in a manner involving unreasonable risk or harm to others.

102.     Defendant BARRAGAN entrusted the Yamaha Waverunner to Defendant Hernandez, who was intoxicated and otherwise impaired.

103.    Defendant LIZBETH BARRAGAN breached this duty by allowing Defendant SAMIR ADRIAN HERNANDEZ, who was visibly intoxicated and impaired from his consumption of alcohol and drugs, to operate the subject vessel at the time and place of the subject accident.

104.    Defendant SAMIR ADRIAN HERNANDEZ'S actions in operating the watercraft were in violation of Nevada and California Laws:

   a). NRS 488.730 and California Harbors and Navigation Code, Section 678-678.15, regarding certification requirements; and

   b). NRS 488.580 Allowing other to operate vessel in a reckless manner.

105.    Defendant LIZBETH BARRAGAN's negligence and negligence per se proximately caused Plaintiff, TAMMY LYNCH to suffer grievous personal injuries and resulted in her death.

106.    As a direct and proximate result of the aforesaid negligence, carelessness and recklessness of the Defendants, and each of them, Plaintiffs sustained the injuries and damages alleged within this Complaint.

**FIFTH CAUSE OF ACTION**

**(Negligence against Defendant DARRYL PETER ALEXANDER, JR.)**

107.    Plaintiff hereby incorporates by reference all preceding paragraphs as if fully set forth herein.

108.    Defendant DARRYL PETER ALEXANDER, JR. had a duty to safely operate the personal watercraft vessel that he had rented from Defendant KABUL, INC., d/b/a FASTRIP PWC RENTALS.

109.    Defendant DARRYL PETER ALEXANDER, JR. breached this duty by operating his personal watercraft in an unsafe and negligent manner at the time and place of the subject accident.

110.   Specifically, Defendant DARRYL PETER ALEXANDER, JR. brought his personal watercraft to a sudden stop in a highly trafficked area, with many other vessels still moving in and about the same area, in order to speak with Plaintiff TAMMY LYNCH and ask her a question.

111.   Prior to bringing his personal watercraft to a sudden stop in this manner, Defendant DARRYL PETER ALEXANDER, JR. failed to scan the area and fail to see if there were any other watercraft vessels travelling in proximity to the location where he had chosen to stop.

112.   In operating his personal watercraft in this manner, and failing to see what was there to be seen, Defendant DARRYL PETER ALEXANDER, JR. violated Navigational Rule 5 (International Regulations for Preventing Collisions at Sea), which states that: "Every vessel shall at all times maintain a proper look by sight and hearing, as well as by all available means appropriate in the prevailing circumstances and conditions, so as to make a full appraisal of the situation and the of the risk of collision." And violated NRS 488.540 regarding the maintenance of a proper lookout for other vessels.

113.   Defendant DARRYL PETER ALEXANDER, JR.'s negligence was a direct and proximate cause and/or contributed to the subject accident, and resulted in severe personal injuries and subsequent death of Plaintiff TAMMY LYNCH.

114.   As a direct and proximate result of the aforesaid negligence of Defendant FASTRIP PWC RENTALS Plaintiffs, in their individual and representative capacities, seek to recover the following damages, all authorized pursuant to NRS 41.085, in addition to those damages permitted by Nevada Law:

(a)   Pecuniary damages for grief or sorrow, loss of probable support, companionship, society, comfort and consortium, and damages for pain, suffering or disfigurement of the Decedent;

(b)    Special damages, such as medical expenses, which the Decedent incurred before her death for and to employ physicians, nurses, physical therapists, and to procure hospitalization, x-rays, medicine, and general medical care and attention; and

(c)    Funeral expenses related to the burial of the Decedent.

115.    The damages recoverable pursuant to NRS 41.085 and NRS 41.100 are in excess of $75,000.00, and are recoverable by the Decedent's heir and Estate.

116.    As a direct and proximate result of the aforesaid negligence, carelessness and recklessness of the Defendants, Decedent suffered economic damages in an amount in excess of $75,000.00, which would have both enriched her estate and would have provided support to her heirs.

117.    As a direct and proximate result of the aforesaid negligence, carelessness and recklessness of the Defendant, the resulting impact caused Plaintiffs to suffer serious physical, emotional, and financial injury, and was rendered sick and lame, receiving both internal and external injuries, severe shock to their nervous system, great pain, suffering, and anxiety all of which caused and will continue to cause Plaintiffs physical, mental and nervous pain and suffering in amounts each in excess of $75,000.00, in specific amounts to be proven at trial.

118.    As a direct and proximate result of the aforesaid negligence, carelessness and recklessness of the Defendant, Plaintiffs were required to incur medical bills and funeral expenses. Upon information and belief, these damages for each Plaintiff are in excess of $75,000.00, in specific amounts to be proven at trial.

119.    As a further direct and proximate result, Plaintiffs suffered a loss of past and future household services, in amounts each in excess of $75,000.00, to be proven at trial.

120.    As a further direct and proximate result, Plaintiffs suffered a loss of the enjoyment of life, in amounts each in excess of $75,000.00, to be proven at trial.

### JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs' demand judgment against all Defendants, and each of them jointly and severally, as follows:

A.    General damages, including but not limited to non-economic damages for pain, suffering, disfigurement, among other forms of damages to the heirs in an amount in excess of $75,000.00;

B.    Damages for loss of income and earning capacity, past and future to the heirs;

B.    Special damages to the Estate for medical expenses and funeral expenses;

C.    Exemplary or punitive damages to the Estate in an amount in excess of $75,000.00;

D.    Prejudgment interest, attorney's fees, and costs of suit incurred herein; and

E.    For such other and further relief as the Court may deem just and proper.

F.    For all damages available pursuant to NRS 41.085, in amounts in excess of $75,000.00; and;

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

G.    10.    For all damages available pursuant to NRS 41.100 in amounts in excess of $75,000.

DATED this 21 day of October, 2021.

SHOOK & STONE, CHTD.

By: _____
JOHN B. SHOOK, ESQ.
Nevada Bar No. 5499
ROBERT L. ENGLISH, ESQ.
Nevada Bar No. 3504
710 South Fourth Street
Las Vegas, NV 89101
Office: (702) 385-2220
*Attorneys for Plaintiff*