UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| TOMMY LYNCH, et al.,<br><br>            Plaintiffs,<br>v.<br><br>LAUGHLIN WATERCRAFT RENTALS, LLC, et al.,<br><br>            Defendants.<br><br>In the matter of Laughlin Watercraft Rentals, LLC, | Case No 2:21-cv-01981-ART-DJA<br><br>ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT AND BIFURCATION<br>(ECF Nos. 112, 114, 115, 116, 117, 118) |

Plaintiffs—parents and heirs and administrators of decedent Tammy Lynch ("the Lynches")—sued Defendant Laughlin Watercraft Rentals ("LWR") for negligent entrustment. LWR rented a jet ski to Defendants Lizbeth Barragan and Ricardo (last name unknown), who then let their friend Defendant Samir Hernandez, who had used cocaine and alcohol, pilot the jet ski. Hernandez crashed the LWR jet ski into decedent, causing her death. LWR has moved for summary judgment on the Lynches' negligent entrustment claim (ECF Nos. 115, 117), and in the alternative, bifurcation of the trial (ECF No. 116), judgment on joint-and-several liability (*id.*), and exclusion of the Lynches' expert (ECF No. 118). The Lynches have moved for partial summary judgment under the doctrine of negligence *per se* against LWR (ECF No. 112) and summary judgment on LWR's affirmative defenses (ECF No. 114).

**I.  Factual Background**

On April 21, 2020, at around 4:50 p.m., Defendant Hernandez crashed his jet ski into decedent Tammy Lynch while she was jet skiing in the Colorado River in Laughlin, Nevada. (ECF No. 117-2 at 4–5.) Lynch died from her wounds soon

after. Hernandez had used alcohol and cocaine earlier in the day and had been speeding when he unintentionally struck Lynch.

The remainder of this section draws on Hernandez's and his companion Lizbeth Barragan's depositions, LWR employees' depositions, and the police report to reconstruct how Hernandez became intoxicated, how Hernandez's group obtained the jet ski, and how Hernandez ended up driving it. Facts are undisputed except as noted.

### A. Hernandez Becomes Intoxicated, and His Group Decides to Rent a Jet Ski from LWR

Hernandez and his friends, including Lizbeth Barragan, Gloria Torales (Barragan's mother), and Ricardo (last name unknown[1]), had come to Laughlin from California to celebrate Hernandez's birthday. Hernandez, who at the time weighed about 200 pounds, snorted one hit of cocaine at around 12:00 p.m. in his hotel room, then drank four or five beers with Ricardo over the next four hours. (ECF No. 117-5 at 10.) Ricardo also drank at least one beer. (*Id.*; *id.* at 13; ECF No. 117-4 at 27.)

At around 4:00 p.m., the group decided to rent a jet ski. The group set up their towels on the beach approximately twenty feet away from the LWR rental station. (ECF No. 117-4 at 29.) Barragan went to rent the jet ski because the group had been told that LWR required a driver's license before renting out a jet ski. (*Id.*) Ricardo and Torales came with her. (*Id.*)

### B. Hernandez's Friend Barragan Rents the Jet Ski from LWR

At the rental counter, Barragan went through the rental and authorization processes to rent a jet ski with LWR employee Allison LaValley. Barragan signed four forms in the five or six minutes she spent at the counter. (ECF No. 117-4 at 8.) Barragan testified that because there was a line behind her, she tried to do

---

[1] The Court refers to all other parties by their last names but uses Ricardo's first name because his last name is not available in the record.

everything quickly and did not read the forms. (*Id.* at 9.) At the rental counter, Barragan signed or initialed: (1) the Laughlin Watercraft Rental Agreement, which was also signed by Torales and Ricardo (ECF No. 127-5); (2) the Rules, Regulations and Instructions agreement, (ECF No. 127-6); (3) the Pre-Boarding Checklist—which Barragan disputes signing—and which Ricardo's girlfriend Delia also signed (ECF No. 127-8); and (4) the "Acknowledgment of Risks, Assumption of Risks and Responsibility, Release of Liability," which Barragan also had her minor daughters sign (ECF No. 127-9).

The forms Barragan and her group signed and initialed contained LWR's expectations for safely using its jet skis as well as acknowledgements about liability and switching operators. The Laughlin Watercraft Rental Agreement required all operators to sign the contract and liability waiver, stating that "Rentor [sic] agrees that he/she satisfies any applicable requirements of the person's state of residency or province relating to the operation of a motorboat or PWC and that ALL OPERATORS must sign contract and liability waiver." (ECF No. 127-5.) The Rules, Regulations, and Instructions warned that operators must "[k]eep a safe distance from other watercraft," that "if you let someone other than yourself drive, you are responsible for any damage or liabilities," and that "[a]ll operators must sign release." (ECF No. 127-6.) This form also warned that no one should "operate the watercraft at any time while under the influence of any drugs or alcohol." (*Id.*) The Pre-Boarding Checklist stated, "Beach Crew Checklist-Show/Discuss the following," with several instructions, including "Keep 100ft from all craft. Stopping distance is over 300ft," and "There are NO BRAKES." (ECF No. 127-8.)

At her deposition, LaValley testified that she orally told Barragan that LWR did not allow anyone to pilot its jet ski until LWR authorized them. (ECF No. 117-4 at 9.) LaValley also stated that she told Barragan's whole group that LWR prohibited using alcohol or drugs before piloting a jet ski. (*See* ECF No. 127-10

at 3–4.)

Barragan, however, testified that neither LaValley nor anyone at LWR ever went over the rules with her, told her that only users authorized by LWR could pilot the jet ski, or told her that LWR prohibited piloting the jet ski after using drugs or alcohol. (ECF No. 117-4 at 8–11.) Barragan testified that she told LaValley that she would not operate the jet ski and that she was renting the jet ski on the group's behalf because she was the only one with a driver's license. (*Id.*) According to Barragan, LaValley said "OK" to this and did not otherwise stop her or request to speak with other people in her group. (*See id.*)

### C. LWR Releases the Jet Ski to Barragan's Group

After signing the forms, Barragan, Ricardo, and Barragan's mother joined the rest of the group, including Hernandez, to receive the jet ski. (ECF No. 117-4 at 10, 32.) The LWR employee who released the jet ski instructed Ricardo on its operation for about three minutes, and, according to Barragan, stated something to the effect of "you don't have to come back here to change drivers. You can change drivers by the side of the beach where you are at." (*Id.*) Barragan stated that this employee did not tell her or her group that if Barragan planned to let others operate the jet ski, those people needed to go through the pre-boarding checklist or authorization procedures. (*Id.* at 11.)

While outside the LWR rental station, Barragan observed other drivers on LWR jet skis drinking from bottles of beer. (ECF No. 117-4 at 10, 29.) LWR's manager at the time stated in her deposition that asking rental customers whether they've been drinking or using drugs "is an invasive question" that might offend a customer, and, as a custom, LWR does not ask its renters whether they've consumed alcohol or drugs that day unless the customer displays an obvious sign of impairment like slurred speech. (ECF No. 127-4 at 8–9.)

Ricardo piloted the jet ski for several minutes before coming back to shore. At shore, Hernandez asked Ricardo if he could drive the jet ski. (ECF No. 127-2

at 13.) Ricardo agreed. Hernandez began piloting the jet ski, and several minutes later he crashed into Lynch. (*Id.*)

## II. Procedural History

The Lynches filed their complaint in this Court alleging negligence against LWR, Barragan, Hernandez, Lynch's boyfriend who had been piloting her jet ski at the time, and the jet ski company that rented to Lynch's boyfriend. (ECF No. 1.) The Lynches later settled with Lynch's boyfriend and the other jet ski rental company. (ECF Nos. 97, 100.)

LWR answered the complaint alleging several affirmative defenses, including assumption of risk, and cross claims of contribution and indemnity against all other defendants. (ECF No. 8.) LWR and the Lynches later obtained the Clerk's entry of default against Barragan. (ECF Nos. 63, 76.) LWR filed a separate complaint, later consolidated with this case, seeking exoneration under the Limitation of Liability Act, 46 U.S.C. §§ 30501 *et seq.* (*See* ECF Nos. 39, 40.)

The Lynches moved for summary judgment on the duty and breach elements of their negligent entrustment claim against LWR (ECF No. 112) and LWR's affirmative defenses (ECF No. 114). LWR moved for summary judgment on liability based on superseding cause and lack of privity or knowledge (ECF No. 117), and in the alternative, summary judgment on joint and several liability and bifurcation of any trials. (ECF No. 116.) LWR also moved in limine to exclude Plaintiff's expert. (ECF No. 118.)

## III. Standard of Review

A party moving for summary judgment must show that there is no genuine issue as to any material fact in the claims or defenses for which it seeks summary judgment. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Once the moving party satisfies its burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The Court

resolves disputed facts and draws all reasonable inferences in the light most favorable to the non-moving party. *Behrend v. San Francisco Zen Ctr., Inc.*, 108 F.4th 765, 768 (9th Cir. 2024). For cross-motions for summary judgment, the Court considers each party's evidence without considering which motion provided the evidence. *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 532 (9th Cir. 2011).

"With admiralty jurisdiction . . . comes the application of substantive admiralty law," but "[t]he exercise of admiralty jurisdiction . . . does not result in automatic displacement of state law." *Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 206 (1996) (internal citations and formatting removed).

## IV. Analysis

LWR seeks summary judgment on the Lynches' negligent entrustment claim, arguing that the Lynches have failed to show that LWR owed a duty to Lynch. LWR also seeks summary judgment for this claim based on proximate cause, arguing that Hernandez's drunken use of LWR's watercraft was a superseding cause to any negligence by LWR. The Lynches seek partial summary judgment on the duty and breach elements of their negligent entrustment claim based on the doctrine of negligence *per se*. The Lynches also seek partial summary judgment on LWR's affirmative defenses. Finally, LWR seeks to bifurcate the liability and damages portion of the trial.

### A. LWR Seeks Summary Judgment on Negligent Entrustment

LWR argues that it had no legal duty to prevent the accident from taking place and that it had no privity or knowledge with Barragan, Ricardo, or Hernandez.

#### 1. Negligent Entrustment Requires Showing that a Rental Company Knew or Had Reason to Know of Risk

In the Ninth Circuit, suits for negligent entrustment in admiralty apply the Restatement (Second) of Torts § 390 (1965). *Churchill v. F/V Fjord*, 892 F.2d 763, 771 (9th Cir. 1988). To make a claim under § 390 for a watercraft, a party must

show that the rental company knew or had reason to know that the renter was likely to use it dangerously and such dangerous use caused damages to the plaintiff. *See* Restatement (Second) of Torts § 390 (1965) (Oct. 2024 update); *see also In re Williams Sports Rentals, Inc.*, 786 F. App'x 105, 106 (9th Cir. 2019) (negligent entrustment applies if jet ski rental company "knew or had reason to know that renters were likely to use it in a manner involving unreasonable risk of harm to others."). Relevant facts include whether the jet ski rental company knew or had reason to know that the renter lacked "the training and experience necessary for safe use" of a jet ski, whether the renter "is likely to use it dangerously," and whether the renter "has a propensity . . . to misuse" the product. *See* Restatement (Second) of Torts § 390. When applying § 390, the element of duty merges with the elements of negligent entrustment. *See Peterson v. Halsted*, 829 P.2d 373, 377 (Colo. 1992) (holding in a case applying Colorado law that § 390 "establishes a useful framework for resolution of the issues of duty and adherence to the standard of care").

LWR argues that it had no duty to warn Lynch—or anyone else—"of the inherent risks of jet skiing" or "the criminal acts of others," no duty to train a renter like Barragan or a non-renter like Hernandez, and no duty to police its watercraft to make sure that its renters were following rules. (*See* ECF No. 117 at 9–10; ECF No. 141.)

These arguments skirt the main issue relevant to negligent entrustment, which is whether LWR had reason to know that Barragan or Ricardo would use LWR's jet ski unsafely. At issue here is whether it was foreseeable that they would allow someone else in their group to pilot the jet ski unsafely.

### 2. LWR Knew or Could Have Known of Unauthorized and Intoxicated Use of Its Jet Skis

Summary judgment is inappropriate here because disputed facts suggest that LWR knew or had reason to know that (1) Barragan or Ricardo would allow

7

an unauthorized operator (Hernandez) to pilot the jet ski and (2) the other operator (Hernandez) might pilot the jet ski while intoxicated.

First, based on the evidence presented, a reasonable factfinder could infer that LWR had reason to know that Barragan or Ricardo would share the jet ski with Hernandez. Barragan testified that no one at LWR told her that every member of her group would need to be authorized by LWR before piloting the jet ski, even after she told LWR staff that she would not be piloting the jet ski. LWR staff then permitted Barragan to be the sole adult initialing the Pre-Boarding Checklist and the sole signature on the Rules and Regulations, both of which contained protocols for piloting the jet ski. This suggests that LWR had reason to know that Barragan would share the jet ski with others in her group without having those members complete LWR's screening procedures. The absence of Ricardo's signature on these documents or any facts suggesting that LWR explained the authorized-pilot rule to Ricardo—who physically received the jet ski from LWR staff along with Hernandez—furthers the point. While the written language in LWR's Rental Agreement and other documents indicates that LWR required authorizing all operators, Barragan testified that she did not read these documents because she felt rushed due to the line behind her. A reasonable juror could infer that LWR turned a blind eye toward allowing unauthorized users to pilot its jet skis, and, accordingly, that LWR had reason to know that Barragan or Ricardo would allow another member of their group, like Hernandez, to do so.

Second, a reasonable factfinder could infer that LWR had reason to know that the pilots of its watercraft may be intoxicated. LWR's manager stated that its policy at the time was to not ask its renters whether they had consumed alcohol or drugs unless the customer displayed an obvious sign of impairment like slurred speech. Barragan saw jet ski drivers in the part of the river visible to LWR staff drinking alcohol while riding LWR jet skis. These facts are enough to allow a juror to infer that LWR turned a blind eye to people piloting their jet skis while

intoxicated, despite text on their forms prohibiting it.

LWR points to *In re Luxury Jet Ski Rentals LLC*, another case involving a jet ski accident, where the court granted summary judgment on negligent entrustment. No. 22:CV-2009-LL-JLB, 2024 WL 3367530, at *6 (S.D. Cal. July 9, 2024). In that case, the jet ski rental company had evidence showing that the driver who crashed "had experience renting and operating jet skis," and plaintiffs did not produce any evidence showing that the rental company had reason to believe it was entrusting the jet ski to an inexperienced operator. In another case cited by LWR, *In re Fun Time Boat Rental & Storage, LLC*, plaintiffs also failed to produce evidence showing that the rental company "knew or should have known that [the renter who crashed] was incompetent to operate the boat." 431 F. Supp. 2d 993, 1001 (D. Ariz. 2006). Both cases are distinguishable because the Lynches put forward evidence showing that LWR entrusted the jet ski to Barragan, who told LWR that she was an inexperienced operator and would not be piloting the jet ski, as well as evidence showing that LWR permitted intoxicated people to pilot its jet skis.

In sum, disputed facts on the record could support a finding that LWR knew or should have known that their jet ski was likely to be used dangerously by an unauthorized, intoxicated user. LWR permitted Barragan to be the sole signatory on forms required to operate an LWR jet ski after she told LWR that she would not operate the jet ski. A reasonable juror could infer from this oversight that LWR knew about the risks of unauthorized people using its watercraft, but ignored obvious signs that this was taking place. LWR instructed Barragan's group (including Hernandez) about switching pilots away from the rental desk without mentioning that all pilots needed to be authorized by LWR, reinforcing the risk that unauthorized operators would pilot the jet ski. These facts would allow a reasonable juror to find that LWR had reason to know Barragan or Ricardo would permit their intoxicated friend, Hernandez, to pilot the jet ski.

Accordingly, the Court denies LWR summary judgment on the duty element of its negligent entrustment claim.

### B. Limitation of Liability Does Not Apply

LWR also argues for limitation of liability on summary judgment for lack of privity or knowledge about Hernandez's use of its watercraft. Limitation does not apply because "if a shipowner knows enough to be liable for negligent entrustment, he knows too much to be eligible for limited liability under the [Limitation of Liability] Act." *See* 2 T. Schoenbaum, Admiralty and Mar. Law § 15:8 n.21 (6th ed., Nov. 2024 Update) (quoting *Joyce v. Joyce*, 975 F.2d 379, 385 (7th Cir. 1992)).

### C. LWR Seeks Summary Judgment under Superseding Cause

LWR next moves for summary judgment on Lynch's claim based on the superseding cause of Hernandez piloting the jet ski while intoxicated. In admiralty law, the doctrine of superseding cause severs liability "where the defendant's negligence in fact substantially contributed to the plaintiff's injury, but the injury was actually brought about by a later cause of independent origin that was not foreseeable." *Exxon Co., U.S.A. v. Sofec, Inc.*, 517 U.S. 830, 837 (1996) (quoting 1 T. Schoenbaum, Admiralty and Mar. Law § 5–3 (2d ed. 1994)).

In admiralty cases, the Ninth Circuit applies factors from the Restatement (Second) of Torts to decide if an intervening cause is a superseding cause that precludes a finding of proximate cause. *Farr v. NC Mach. Co.*, 186 F.3d 1165, 1169 n.14 (9th Cir. 1999) (quoting Restatement (Second) of Torts § 442). Superseding or intervening cause "is at bottom an expression of the requirement of foreseeability." *Id.* Proximate cause is generally a question of fact that should be decided at trial. *Christensen v. Georgia-Pac. Corp.*, 279 F.3d 807, 815–16 (9th Cir. 2002).

The first set of factors compares the intervening cause and the defendant's negligence. If the intervening cause brings about harm that is not different in

kind than expected from the defendant's negligence; or the intervening cause is normal in view of the circumstances; or the cause is a foreseeable result of the situation created by the defendant's negligence, then the intervening cause is likely not a superseding cause. *Farr*, 186 F.3d at 1169 n.14. The second set of factors considers the nature and culpability of the intervening cause or actor. If the intervening cause is "due to a third person's act" or omission—and that act is wrongful and subjects the third person to civil or criminal liability—then the intervening cause is likely to be a superseding cause. *See id.*

While the second set of factors weighs in favor of finding Hernandez's intoxicated driving to be a superseding cause, the first set of factors weighs against it, preventing the Court from granting summary judgment to LWR. A reasonable juror could find that a drunken crash is the kind of harm that would be expected from a jet ski rental company failing to screen pilots and failing to enforce a policy against using its jet skis while intoxicated. That juror could also find that the crash was not extraordinary since other LWR jet ski pilots were drinking while driving. That juror could also find that Hernandez did not operate independently of the situation created by LWR's alleged negligence, since Barragan testified that she told LWR that others would be driving the jet ski, arguably giving LWR reason to verify which group members would pilot the jet ski. The second set of factors weighs in favor of LWR because the intervening cause was the act of a third person, Hernandez, who injured Lynch, and Hernandez was found criminally culpable of his wrongful act.

Accordingly, while some factors favor finding that Hernandez is a superseding cause, others weigh in favor of Lynch. Resolving disputed facts in the Lynches' favor, this question is inappropriate to answer at summary judgment. Instead, these arguments are for the factfinder to resolve in determining proximate cause. The Court denies Defendant's motion.

### D. The Lynches Seek Summary Judgment on Negligence Per Se

The Lynches seek summary judgment based on the theory of negligence *per se* on the duty and breach elements of their negligent entrustment claim because LWR failed to comply with NRS 488.730(3). LWR responds that negligence *per se* should not apply because NRS 488.730(3) is preempted by federal maritime law and that fact issues preclude summary judgment.

NRS 488.730 sets out the requirements to legally operate a motorized vessel on Nevada's interstate waters (referred to here as "watercraft" or "power-driven vessels"). The statute requires watercraft operators to obtain boat-safety qualifications and carry proof of such qualifications while operating a watercraft. NRS 488.730(1)–(2). It also lays out several requirements for businesses that rent watercraft to the public. NRS 488.730(3)–(5). These sections were intended to prevent watercraft rental companies from renting to inexperienced users. *See* Hearing on A.B. 469 Before the Assembly Comm. on Nat. Res., Agric., and Mining, 71st Leg. (Nev. Apr. 11, 2001) (noting protection from inexperienced boat operators as a reason for statute). At issue here is NRS 488.730(3), which requires a rental company to make sure that a renter is (1) 18 years or older and (2) has signed an affidavit affirming that the renter has completed a safe boating course, possesses a license to operate a maritime vessel, or satisfies the requirements of the person's state of residency relating to operation of a watercraft. NRS 488.730(3).

### 1. NRS 488.730 is Not Preempted in This Case

LWR argues that NRS 488.730(3) is preempted by federal maritime law. "[T]he general rule on preemption in admiralty is that states may supplement federal admiralty law as applied to matters of local concern, so long as state law does not actually conflict with federal law or interfere with the uniform working of the maritime legal system." *Pac. Merch. Shipping Ass'n v. Aubry*, 918 F.2d 1409, 1422 (9th Cir. 1990). Under *Aubry,* preemption requires showing that a state law

12

either contravenes an act of Congress or that it unduly disrupts uniformity in maritime law. *Id.*

LWR argues based on the reasoning in *Kermarec v. Compagnie* and *Branch v. Schumann* that NRS 477.730(3) disrupts uniformity in maritime law. 358 U.S. 625, 632 (1959); 445 F.2d 175, 178 (5th Cir. 1971). In *Kermarec*, the Supreme Court held that a New York tort law setting a lower standard of care for licensees did not apply in admiralty, and, instead, shipowners owe a general duty of reasonable care to all people legally aboard the ship. 358 U.S. at 632. In *Branch*, the Fifth Circuit interpreted *Kermarec* to preempt a Florida statute raising the standard of care for boats to "the highest degree of care in order to prevent injuries to others." 445 F.2d at 178. Both *Kermarec* and *Branch* are distinguishable because they dealt with state-mandated standards of care that conflicted with the standard of care in admiralty, which requires reasonable care under the circumstances. At least in this case, NRS 488.730(3) does not alter the standard of care; it requires that watercraft rental agencies in Nevada make renters sign an affidavit affirming that they have some boat-safety qualifications. Because LWR has not otherwise shown how NRS 488.730(3) disrupts uniformity in maritime law or contravenes an act of Congress, preemption is inappropriate in this case.

### 2. Fact Issues Preclude Summary Judgment on Negligence Per Se

The Lynches argue that because LWR violated NRS 488.730, they are entitled to summary judgment on the duty and breach elements of their negligent entrustment claim. Because there is no binding federal standard for negligence *per se* in admiralty, courts may apply common law principles and relevant state law. *See Garcia v. Vitus Energy, LLC*, 605 F. Supp. 3d 1188, 1204–05 (D. Alaska 2022) (collecting cases showing various approaches). Nevada recognizes the doctrine of negligence *per se,* which allows a plaintiff to prove negligence by

13

showing that the defendant violated a statute that was designed to protect a class of persons to which the plaintiff belongs, and the plaintiff's injury is the kind of injury the statute intends to prevent. *See Atkinson v. MGM Grand Hotel, Inc.*, 98 P.3d 678, 680–81 (Nev. 2004) (noting that proof of a statutory violation shifts the burden to defendant to show that its conduct was excused or justified); *Barnes v. Delta Lines, Inc.*, 669 P.2d 709, 710–11 (Nev. 1983) (*per curiam*). In seeking summary judgment only on the duty and breach elements, the Lynches recognize that proximate cause is a factual issue. Though the Lynches argue that LWR indisputably violated NRS 488.730(3)'s affidavit requirement, LWR argues that whether it violated the statute is a factual question.

NRS 488.730(3) requires watercraft-rental companies to verify that a renter is over eighteen and to obtain an affidavit attesting that the renter satisfies one of three watercraft-safety qualifications. If the renter is from out of state, the affidavit must state that the renter "satisfies any applicable requirements of the person's state of residency or province relating to the operation of a power-driven vessel." NRS 488.730(3)(b)(3). There is no dispute that the form Barragan signed (1) indicated she was over eighteen, which LWR verified; and (2) included the following text before Barragan's signature: "Rentor [sic] agrees that he/she satisfies any applicable requirements of the person's state of residency or province relating to the operation of a motorboat or PWC . . . ." (ECF No. 112-2 at 3.)

The Lynches argue that LWR indisputably violated the affidavit requirement because the form Barragan signed is not an affidavit or its legal equivalent. Under Nevada law, an affidavit must be either sworn before an authorized officer or declared under penalty of perjury. *MountainView Hosp. v. Dist. Ct.*, 273 P.3d 861, 866 (Nev. 2012); *see also* NRS 53.045 (allowing unsworn declaration in lieu of affidavit if signed under penalty of perjury). LWR argues that it complied with the requirements of NRS 488.730(3) despite its Rental Agreement

14

not being in the form of an affidavit or declaration. Specifically, LWR argues that the Rental Agreement contained the language applicable to an out-of-state renter like Barragan, LaValley's testimony suggests that she obtained verbal assent from Barragan's group about LWR's policies, and LWR's expert opined that LWR complied with the statute by virtue of making Baragan sign the Rental Agreement. (ECF No. 130 at 6.)

Thus, the dispute turns on whether NRS 488.730(3)'s affidavit requirement requires strict or substantial compliance. The Lynches insist on strict compliance, while LWR argues substantial compliance suffices. In Nevada, whether a statute requires strict or substantial compliance is a legal question, which neither party has addressed. *See BMO Harris Bank, N.A. v. Whittemore*, 535 P.3d 241, 245 (Nev. 2023) ("The substantial-compliance standard recognizes performance as adequate where the reasonable purpose of a statute has been met, even absent technical compliance with the statutory language."). Because the parties have not addressed this legal question, and there appear to be no Nevada cases interpreting this statute, the Court assumes without deciding that NRS 488.570(3) requires only substantial compliance. If so, then a genuine issue of material fact exists as to whether the LWR violated the statute.

Accordingly, the Court denies Plaintiff's motion for partial summary judgment on negligence per se (ECF No. 112).

**E. The Lynches Seek Summary Judgment on Affirmative Defenses**

Lynch moves for summary judgment on LWR's affirmative defenses of comparative negligence (affirmative defenses 1–3), assumption of risk (affirmative defenses 4 and 12), bad faith action (affirmative defense 10), and mitigation of damages (affirmative defense 11). LWR responds that it should be permitted to argue an assumption-of-risk affirmative defense. Lynch responds that federal maritime law's comparative negligence scheme preempts assumption of risk as an affirmative defense.

Assumption of risk is not a bar to liability under Nevada law or federal admiralty law. *Turner v. Mandalay Sports Ent., LLC*, 180 P.3d 1172, 1177 (Nev. 2008) (assumption of risk as bar to claim "should be incorporated into the district court's initial duty analysis . . . not . . . treated as an affirmative defense to be decided by a jury"); *see also FCH1, LLC v. Rodriguez*, 335 P.3d 183, 187 (Nev. 2014) (primary assumption of the risk and limited duty are identical doctrines).[2] Under federal admiralty law, "[a]ny rule of assumption of risk . . . whatever its scope, must be applied in conjunction with the established admiralty doctrine of comparative negligence and in harmony with it." *Socony-Vacuum Oil Co. v. Smith*, 305 U.S. 424, 431 (1939).

Accordingly, applying admiralty law and Nevada law, assumption of risk is not available to LWR as an affirmative defense. Additionally, because LWR concedes Lynch's arguments seeking summary judgment on LWR's affirmative defenses of bad faith action and mitigation of damages (*see* ECF No. 132), the Court grants those parts of Lynch's motion (ECF No. 114) in full. The Court permits LWR to argue comparative negligence as a theory limiting liability, but not as an affirmative defense.

**F. LWR Seeks Bifurcation**

LWR requests bifurcating proceedings to one bench trial on liability, and, if necessary, a jury trial on damages. Lynch opposes bifurcation and seeks a single trial on liability and its negligent entrustment claim.

A court sitting in admiralty and diversity jurisdiction has discretion to separate or consolidate a limitation proceeding and a jury proceeding. *See Newton v. Shipman*, 718 F.2d 959, 963 (9th Cir. 1983) (emphasizing district court's discretion to select "the most efficient manner" of hearing limitation of liability

---

[2] The Court notes that *Turner's* holding concerns primary, not secondary, implied assumption of risk, and that LWR has not argued that secondary implied assumption of risk applies in this case. 180 P.3d at 1177.

16

claim and tort claim). For instance, the court could "hold one trial so that the jury hears the whole case but decides only the non-maritime issues." 2 T. Schoenbaum, Admiralty & Mar. Law § 21:15 (6th ed. 2024).

At oral argument, the Lynches argued that there will be overlapping witnesses in both damages and liability proceedings. If LWR receives no limitation or exoneration under the Limitation of Liability Act, then bifurcating the proceedings will require witnesses to testify twice and possibly require empaneling more than one jury. On the other hand, LWR argues that deciding liability issues first will streamline the case by avoiding a protracted damages phase of the trial if no liability is found. If LWR is not liable under the Limitation of Liability Act, then the first proceeding will resolve the entire case, and there will be no need to empanel a jury.

For the convenience of the witnesses and interest of judicial economy, the Court will consolidate all proceedings—including liability and damages—in one jury trial. This will promote judicial economy because of "the possibility that a jury will find no liability . . . and thereby moot the limitation proceeding." *Newton*, 718 F.2d at 963. The Court will enter no verdict on LWR's Limitation of Liability counterclaim until after the jury's verdict on liability and damages. *See* 28 U.S.C. § 1292(a)(3). At that time, the Court will decide LWR's motion for limitation or exoneration under the Limitation of Liability Act.

**G. LWR Seeks to Confirm that Joint and Several Liability Does Not Apply for Settling Defendants.**

LWR argues that because the Lynches settled with Lynch's boyfriend and the other jet ski rental company, joint and several liability should no longer apply to those claims.

After an injured party in a maritime case has settled with one defendant, "[t]he money paid extinguishes any claim that the injured party has against the released tortfeasor and also diminishes the claim that the injured party has

17

against the other tortfeasors by the amount of the equitable share of the obligation of the released tortfeasor." *McDermott, Inc. v. AmClyde*, 511 U.S. 202, 209 (1994). The Lynches settled with Lynch's boyfriend and the other jet ski rental company. (*See* ECF No. 100.) The Lynches argue that this is a non-ordinary case, like a multi-defendant maritime asbestos or RICO case, where courts have decided to depart from the *McDermott* rule. *See Hutchins v. Anco Insulations, Inc.*, 625 F. Supp. 3d 504, 511 (E.D. La. 2022). This is not an asbestos or RICO case, and having five defendants does not make the case too complicated to apply *McDermott*. Should the case require the jury to determine comparative fault, the jury will be permitted to allocate proportionate responsibility to the settled defendants. Accordingly, the Court grants LWR's motion for judgment on joint and several liability (ECF No. 116), holding that a jury will be instructed to assess proportionate responsibility among settled defendants.

### H. LWR Moves to Exclude Plaintiffs' Expert (ECF No. 118)

The Court dismisses LWR's motion in limine to exclude the Lynches' expert without prejudice and leave to refile before trial. The joint pre-trial order will indicate deadlines for such motions and address the need for an evidentiary hearing.

## V. Conclusion

Accordingly, the Court rules as follows regarding the cross-motions for summary judgment (ECF Nos. 112, 114, 116, 117):

The Court denies the Lynches' motion for summary judgment on negligence *per se*. (ECF No. 112.)

The Court grants the Lynches' motion for summary judgment on LWR's affirmative defenses in full. (ECF No. 114.)

The Court denies LWR's motion for summary judgment on liability regarding duty and superseding cause. (ECF Nos. 115, 117.)

The Court denies LWR's motion for bifurcation and grants LWR's motion to

limit joint-and-several liability in accordance with *McDermott, Inc. v. AmClyde*, 511 U.S. 202, 209 (1994). (ECF No. 116.)

The Court dismisses LWR's motion to exclude Lynches' expert without prejudice and permits LWR to resubmit the motion following settlement conference and submission of a joint pretrial order. (ECF No. 118.)

Dated this 29th day of July, 2025.

ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE